**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GENCI VOJA**,<br><br>Plaintiff,<br><br>v.<br><br>**KRISTI L. NOEM**, *et al.*<br><br>Defendants. | Case No. 25-cv-1761 (CRC) |

**MEMORANDUM OPINION**

Through a program known as EB-5, United States Citizenship and Immigration Services ("USCIS") issues immigration visas to eligible noncitizens who make qualifying investments in the United States. Plaintiff Genci Voja, an Albanian national, applied for an EB-5 visa and was denied by USCIS. It concluded Mr. Voja had failed to meet his burden of showing a threshold requirement of the program: that his invested capital derived from lawful means. Voja appealed that determination within the agency without success. He then filed suit in this Court under the Declaratory Judgment Act and Administrative Procedure Act, alleging that USCIS's denial was arbitrary and capricious, contrary to law, and unsupported by substantial evidence. The parties now cross-move for summary judgment. Concluding that the agency's decision was reasonable and supported by the record, the Court will grant Defendants' motion.

## I. Background

### A. Legal Background

The Immigration and Nationality Act ("INA") provides "Employment Creation" visas, known as EB-5 visas, to qualified foreign nationals who invest "capital" in a "new commercial enterprise" ("NCE") that creates at least ten full-time jobs in the United States. 8 U.S.C. § 1153(b)(5)(A)(i)–(ii). A regulation issued by the Immigration and Naturalization Service

("INS") to implement the INA states that "[a]ssets acquired, directly or indirectly, by unlawful means (such as criminal activities) shall not be considered capital" for purposes of § 1153(b)(5). 8 C.F.R. § 204.6(e).[1]

This regulation, and related ones, create what is known as the "source of funds" or the "lawful source" requirement, which asks whether the "capital" used for an EB-5 investment was obtained "lawfully." 8 C.F.R. § 204.6(j); see id. § 204.6(e); id. § 204.6(j)(3); id. § 204.6(g)(1). To show the applicant "has invested, or is actively in the process of investing, capital obtained through lawful means," the EB-5 petition must include "relevant financial documents" such as "[f]oreign-business registration records," "[c]orporate . . . and personal tax returns," or any other "[e]vidence identifying any other source(s) of capital." Id. § 204.6(j)(3)(i)–(iii). This lawful-source rule has been repeatedly recognized by courts in this district. See Le v. USCIS, No. 21-cv-501 (JMC), 2025 WL 1743942, at *10 (D.D.C. June 24, 2025); Mo v. USCIS, 719 F. Supp. 3d 21, 25 (D.D.C. 2024).

Relatedly, the EB-5 petitioner, as opposed to someone else, must own the capital invested. See 8 C.F.R. §§ 204.6(j) (requiring "*the alien* has invested or is actively in the process of investing lawfully obtained capital"); see Sadeghzadeh v. USCIS, 322 F. Supp. 3d 12, 18 n.5 (D.D.C. 2018). This investor-ownership requirement, like the lawful-source requirement, has been widely recognized. See Sun v. USCIS, No. 21-cv-1612 (CKK), 2025 WL 947463, at *6 & n.6 (D.D.C. Mar. 28, 2025) (collecting cases).[2] The burden of proof in adjudicating an EB-5 visa

---

[1] In 2022, Congress added language to the INA that mirrors the language of the regulation. See Pub. L. 117-103 (2022). The parties do not dispute that the version of the INA relevant here is the one in effect when Voja applied for an EB-5 visa, before that amendment. In any event, the Court sees nothing in the amendment that would change the bottom line. Nor do the parties argue to the contrary.

[2] The requirements that a petitioner show he obtained the funds lawfully and show he owned the funds at issue have been called the "path of the funds" or "complete path of funds"

application falls on the petitioning investor, who must establish her full qualifications by a preponderance of evidence. See 8 U.S.C. § 1361; 8 C.F.R. § 103.2(b)(1); Li v. USCIS, No. 25-cv-00002 (RC), 2026 WL 799490, at *2 (D.D.C. Mar. 23, 2026). The preponderance-of-evidence standard requires that the evidence demonstrate the applicant's claim is "probably true," based on the particular facts of the individual case. Id. When adjudicating an application pursuant to such a standard, the USCIS officer must "examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence, to determine whether the fact to be proven is probably true." Id. (citation omitted).

B. Factual & Procedural Background

Mr. Voja is a citizen of Albania. See AR 9. In November 2018, he invested $500,000 into CMB Infrastructure Investment Group 68, LP, an NCE based in Rock Island, Illinois. See id. at 10–12, 111. He applied for an EB-5 visa with USCIS in February 2019. See id. at 5.

In his application, Voja said he backed the investment with "personal funds," namely employment and rental income from himself and his wife. Id. at 21. And he provided evidence showing that the investment funds had traveled from his Credins Bank account in Albania, to his

---

requirement. See Sadeghzadeh v. USCIS, 322 F. Supp. 3d 12, 17–18 (D.D.C. 2018); Sun, 2025 WL 947463, at *6 ("[T]he relevant regulations authorize USCIS to require evidence showing the 'path of the funds' that an EB-5 petitioner invests in the United States to prove two propositions: (1) that the invested capital in fact belonged to the petitioner, and (2) that the petitioner obtained her capital from a lawful source."). As Voja correctly observes, though, the phrase "path of funds" does not appear in the statute or regulations. Rather, it emerged as a shorthand for one or both of the lawful-source rule and the owner-investor rule. The phrase has been used inconsistently and imprecisely by the agency, litigants, and courts. To avoid confusion, this Opinion eschews the "path of funds" terminology and instead refers to the lawful-source requirement and the separate investor-ownership requirement.

Bank of America account, to his attorney's Suntrust Bank account, and finally to the NCE's First Midwest Bank escrow account. See id. at 21, 111–16.

In February 2023, USCIS sent Voja a letter alerting him that the initial evidence he submitted was insufficient to establish he had invested capital obtained through lawful means and requesting further evidence to address the deficiencies. See id. at 2306–12. Voja then submitted 34 exhibits totaling more than 1,000 pages, along with a narrative explanation of the investment funds. See id. at 2321–3388.

USCIS denied the application in July 2023, citing several evidentiary deficiencies. See id. at 3389–97. For one, none of the bank statements Voja submitted as evidence showed wire transfers into his Bank of America account, and Voja failed to submit bank statements from that account. See id. at 3396. Without a "complete narrative" about that account, USCIS concluded "the record does not establish that these funds derived from Petitioner's lawfully accrued income." Id. Relatedly, USCIS found that the lack of bank statements from the Bank of America account meant Voja had failed to show the funds transferred to that account "were the only funds in the account, and were not commingled or replaced with other unidentified funds that may have derived from unlawful means—directly and indirectly." Id. USCIS also observed an unexplained three-month gap between Voja wiring the funds to his attorney's Suntrust Bank account and the NCE receiving the funds from that Suntrust account. Id. Given the gap, USCIS lacked confidence the funds in his attorney's account were "not commingled or replaced with other unidentified funds that may have derived from unlawful means—directly and indirectly—before the investment into the NCE[.]" Id.

Voja appealed to USCIS's Administrative Appeals Office ("AAO"), providing new evidence and explanations for the origin of his investment funds. The AAO dismissed the appeal

in February 2025. See id. at 3930. It concluded that Voja "has not demonstrated, by a preponderance of the evidence, that the funds he invested were not derived, directly or indirectly, from unlawful means." Id. at 3927. The AAO came to this conclusion for two reasons. First, the AAO said that Voja failed to demonstrate the lawful source of three treasury bonds that he newly claimed had contributed to his EB-5 investment funds. When petitioning USCIS, Voja said the investment funds "were derived solely from salary and rental income accumulated between 2013 and 2018." Id. at 3929. But Voja pivoted in his appeal to the AAO, now stating that "the majority of the funds" in fact had come from the 2017–18 redemptions of three treasury bonds, totaling more than $700,000.[3] Id.; see id. at 3415. Not only had his narrative of the funds changed, but the AAO found that Voja failed to show "when those bonds were acquired or established the source of the funds used to acquire them." Id. at 3929. The agency thus concluded Voja failed to meet his burden of tracing the funds "back to a lawful source." Id. Second, and similarly, the AAO found that Voja had submitted insufficient evidence concerning the source of a $200,000 cash deposit made to the Credins Bank account. See id. at 3929–30. Thus, as with the treasury bonds, the agency concluded Voja "has not sufficiently established that the funds he invested in the NCE did not derive, directly or indirectly, from unlawful means."[4] Id. at 3930 (citing 8 C.F.R. § 204.6(e)).

---

[3] In his response to the request for evidence, Voja attached an exhibit that seemed to show the redemption of several bonds between 2016 and 2018. See AR.3222. However, as the AAO pointed out, Voja "did not mention this evidence or explain its significance in his narrative explanation of the path and source of the funds used for his EB-5 investment." AR.3929 n.9. Not only did he fail to explain the bonds, but Voja affirmatively reiterated that "all my family income comes from salary and land rents contracts[.]" AR.2324.

[4] Recognizing that the underlying USCIS decision had identified other evidentiary deficiencies as bases to deny Voja's petition, the AAO "reserve[d] discussion of these issues for future consideration if the need arises." AR at 3930 n.11.

In June 2025, Voja filed the current suit in this Court. See ECF No. 1. Cross-motions for summary judgment are now ripe.

## II. Legal Standards

Voja sues under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., to challenge the AAO's decision—which is the final agency action for the Court's review. See Rossville Convenience & Gas, Inc. v. Garland, No. 20-2218 (JDB), 2021 WL 5865446, at *11–12 (D.D.C. Dec. 10, 2021) (treating the AAO's opinion affirming the denial of a visa petition by USCIS as the final agency action for purposes of APA review). When reviewing final agency action under the APA, a district court "sits as an appellate tribunal," with "[t]he entire case on review" as "a question of law." See Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "In the APA context, summary judgment is the mechanism for deciding whether, as a matter of law, an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." Gulf Restoration Network v. Bernhardt, 456 F. Supp. 3d 81, 93 (D.D.C. 2020). "[T]he function of the district court is to determine whether or not . . . the evidence in the administrative record permitted the agency to make the decision it did." Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89–90 (D.D.C. 2006) (internal citations omitted).

Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[A] court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." Seven Cnty. Infrastructure Coal. v. Eagle County, 605 U.S. 168, 180 (2025); see Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (explaining the APA's "narrow" standard of review queries whether the

agency "examine[d] the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made").

The court's review is "fundamentally deferential—especially with respect to matters relating to an agency's areas of technical expertise." Fox v. Clinton, 684 F.3d 67, 75 (D.C. Cir. 2012) (cleaned up). The court "is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43. "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (internal quotation marks omitted). Unless the court "can conclude that no rational adjudicator would have come to the same conclusion," it must uphold the agency's decision. Visinscaia v. Beers, 4 F. Supp. 3d 126, 133 (D.D.C. 2013).

"[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." Dep't of Com. v. New York, 588 U.S. 752, 780 (2019). Importantly, a court may not "supply a reasoned basis for the agency's action that the agency itself has not given." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (internal quotation marks and citation omitted). Still, the court "must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." Garland v. Ming Dai, 593 U.S. 357, 369 (2021) (internal quotation marks omitted).

## III. Analysis

To prevail at summary judgment, Voja must show that both of the AAO's bases for denying his application were arbitrary and capricious, contrary to law, or unsupported by substantial evidence. See Mo, 719 F. Supp. 3d at 28; Pierce v. SEC, 786 F.3d 1027, 1034 (D.C. Cir. 2015) ("[A] reviewing court will uphold an agency action resting on several independent grounds if any of those grounds validly supports the result."). He urges the Court to vacate the

agency's denial of his visa application for two reasons. *First*, he claims the denial rested on a misinterpretation of regulations requiring the petitioner to show the lawful source of his EB-5 investment funds. *Second*, he argues the agency acted improperly by misconstruing the evidence he presented about the lawful sources of his funds.

For the reasons explained below, neither argument is availing. The Court addresses each in turn.

A. <u>The "source of funds" rule</u>

Voja takes issue with the agency's interpretation of its own regulations—specifically, the provision requiring the investor not rely on "capital" that was "acquired, directly or indirectly, by unlawful means (such as criminal activities)." Pl.'s Mot. for Summ. J., ECF No. 14 ("Pl.'s MSJ") at 12 (quoting 8 C.F.R. § 204.6(e)). In his view, the regulation requires an EB-5 applicant show only that "the *immediate* source of his funds was capital he obtained through lawful means." Pl.'s MSJ at 13 (internal quotation marks and citation omitted). That is, Voja claims that the regulations prohibit USCIS from denying an EB-5 petition for failing to account for anything beyond the "immediate" source of the funds. <u>Id.</u> at 13–14. Applied here, Voja insists the agency is prohibited from inquiring into *how* he obtained either the treasury bonds or the $200,000 deposit. Once the agency determined that he lawfully possessed those funds, Voja argues, it could not cite the absence of evidence beyond the "immediate" source as a basis to deny his petition. The agency argues the opposite: The regulations allow it to deny an EB-5 application if the applicant fails to establish that the invested capital hales from lawful lineage, and nothing prevents the agency from probing beyond that capital's "immediate" source to assess its lawfulness. <u>See</u> Def.'s MSJ at 17–18.

The agency has the better argument.[5] The implementing regulations reiterate that "capital" excludes "[a]ssets acquired, directly or indirectly, by unlawful means (such as criminal activities)[.]" 8 C.F.R. § 204.6(e). The regulations then list the types of documents that the investor must include with his petition to establish the lawfulness of his funds. See 8 C.F.R. §§ 204.6(j)(3)(i–iv). In promulgating the regulations, the INS explained that "[t]his additional evidentiary requirement carries out Congress's instruction that 'processing of an individual visa not continue under this section if it becomes known to the Government that the money invested was obtained by the alien through other than legal means (such as money received through the sale of illegal drugs).'" 56 Fed. Reg. at 60,904 (citing S. Rep. No. 101–55, at 21). In other words, the regulations reflect Congress's intent that the agency deny EB-5 visas to those applicants who fail to show their investment funds have a legitimate pedigree.

The plain language of the regulations confirms the agency's interpretation. See Borushevskyi v. USCIS, No. 23-5116, 2024 WL 2762146, at *1 (D.C. Cir. May 30, 2024) (per curiam) (affirming the denial of a visa application based on the "plain text" of 8 C.F.R. §§ 204.6(e), (j)); see also Mo, 719 F. Supp. 3d at 31. Nothing in the text of the regulations suggests that the agency must only skim the surface to ascertain whether investment funds were obtained lawfully. To the contrary, the regulations permit the agency to deny an application if

[5] The agency briefly suggests, for the first time in reply, that the Court should defer to its interpretation of the regulations. See Defs.' Reply at 7; see Sun, 2025 WL 947463, at *8 (discussing Kisor in the context of 8 C.F.R. § 204.6). "Courts defer to an agency's interpretation of its own regulation if the regulation in question is 'genuinely ambiguous' and if the agency's reading is reasonable." Doe v. SEC, 28 F.4th 1306, 1311 (D.C. Cir. 2022) (quoting Kisor v. Wilkie, 588 U.S. 558, 573–75) (2019)). "The interpretation must be the agency's 'authoritative' or 'official position,' 'implicate its substantive expertise' and reflect 'fair and considered judgment' to receive deference." Id. (quoting Kisor, 588 U.S. at 577). The Court need not decide whether "Kisor deference" applies here. Even assuming it does not, the Court concludes *de novo* that the agency's interpretation of the regulations is the right one. See Borushevskyi v. USCIS, No. 23-5116, 2024 WL 2762146, at *1 (D.C. Cir. May 30, 2024) (per curiam).

the applicant fails to show that the funds were obtained by unlawful means "directly *or indirectly*." 8 C.F.R. § 204.6(e) (emphasis added). Voja's interpretation ignores the word "indirectly." "Indirect" means "not direct." *Indirect*, Merriam Webster's Dictionary (2026). "Direct," in turn, means "stemming immediately from a source." *Direct*, Merriam Webster's Dictionary (2026); see *Direct*, Black's Law Dictionary (12th ed. 2024) ("Free from extraneous influence; immediate."). The regulation's use of "indirectly" thus dooms Voja's argument. Showing that funds were obtained by lawful means "indirectly" means more than showing that funds were so obtained immediately prior to the NCE investment.

Voja's counterargument is unpersuasive. He decries that the agency's interpretation "appears nowhere in the regulations[.]" Pl.'s MSJ at 4. But the same can be said about his own interpretation: The regulations nowhere use the term "immediate" or suggest the agency must be so limited in its inquiry into the source of the funds. See Borushevskyi v. USCIS, 664 F. Supp. 3d 117, 128 (D.D.C. 2023) (quoting S. Rep. No. 101–55, at 21), aff'd, No. 23-5116, 2024 WL 2762146 (D.C. Cir. May 30, 2024) (per curiam) (discussing the plain language and legislative history). Voja fails to define what he means by "immediate" in his proposed "immediate source" interpretation. It is not obvious what would constitute the "immediate" source of funds in his own case. After all, his capital took a circuitous route into the United States: from a bank account in Albania, to his bank account in the United States, to his attorney's bank account, to the NCE's escrow account. See AR.21, 111–16. Voja does not explain at which of these points (or earlier ones still) the source of funds would no longer be "immediate." Perhaps more consequentially, Voja offers no argument as to the meaning of "indirectly," which *does* appear in the regulation. Nor does he contend how the agency arbitrarily or capriciously interprets

"indirectly" to require that petitioners show that invested funds do not descend from an unlawful source.

The Court rejects the idea that Congress intended to restrain agencies from engaging in reasonable efforts to assess whether funds used to create a pathway to citizenship derive from unlawful sources. Instead, the more natural and common-sense reading of the regulation at issue allows the agency to inquire into the history of the capital.[6]

B. Voja's source of funds

Voja next takes a different tack. Even assuming the agency can look beyond the "immediate" source of funds, he argues that the agency's denial of his application violated the APA by failing to consider all relevant evidence. See Pl.'s MSJ at 17–18. He asserts that he did, in fact, fully account for the lawful sources of his capital, including the treasury bonds and the $200,000 deposit.

The Court disagrees. Voja points to parts of the AAO opinion where the agency said he "has now explained and demonstrated the path of funds from three redeemed treasury bonds to his Credins [Bank account] and provides evidence of his and his spouse's ownership of the treasury bonds[.]" AR.3929; see Pl.'s MSJ at 17. But Voja misconstrues the import of this statement, conflating the "lawful source" requirement with the separate requirement that the investor actually owned the funds at issue. See 8 C.F.R. §§ 204.6(e), (j); supra footnote 2 (explaining the imprecision around the phrase "path of funds"). Context makes clear the agency faulted Voja for failing to meet his burden of showing the lawful source of the treasury bonds and the $200,000 deposits. That is, the agency did not deny his petition because he failed to

[6] This is not to say that USCIS could not act arbitrarily and capriciously by requiring an EB-5 investor to trace his investment funds to an unreasonable extent. But that is not this case.

show he owned those funds.[7] See Defs.' Cross-MSJ at 15 ("[T]he AAO was clear that the ultimate focus was the lack of evidence regarding the *lawful source* of the investment and not channels such funds took[.]"). As the AAO explained, Voja "has not demonstrated the lawful source of his purported EB-5 investment." AR.3930; see id. (concluding Voja failed to show the funds "did not derive, directly or indirectly, from unlawful means" (citing 8 C.F.R. § 204.6(e))).

Voja fails to rebut these conclusions. As to the bonds, he documents their redemption for $700,000 between 2017 and 2018 and, in turn, how those proceeds wound up in his bank accounts. See Pl.'s MSJ at 2–3, 15–16. But he fails to point to evidence explaining how he obtained the bonds in the first place.[8] The same is true of the $200,000 deposit. As Voja recognizes, money is fungible. See Pl.'s MSJ at 18–19. Without explaining or documenting the origin of the treasury bonds or $200,000 deposit, he cannot claim with any certainty that funds of unknown provenance were not part of his EB-5 investment. See Mo, 719 F. Supp. 3d at 29; Matter of Ho, 22 I. & N. Dec. 206, 211 (1998) (noting that "simply going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof"

[7] True, the AAO several times said Voja failed to establish the "complete path" of his funds. But, as the agency correctly points out before this Court, the AAO was primarily concerned that Voja failed to adequately "trace the path of fund *back to a lawful source*." AR.3927 (emphasis added); see id. at 3929 (similar); id. at 3930 (similar); see also Defs.' Cross-MSJ at 15. The agency's "less than ideal clarity" in discussing the "path of funds" does not require reversal, since its reason for denial is "clear enough." Adams v. FAA, 168 F.4th 1271, 1278 (10th Cir. 2026) (quoting Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 221 (2016)).

[8] Discussing how he had converted a treasury bond into Albanian Leks in 2018, Voja claims "a petitioner does not obtain any new 'capital' when he merely 'converts' an asset 'from one denomination to another.'" Pl.'s Reply at 9 (quoting Zhou v. Noem, No. 19-2650 (TJK), 2025 WL 416152, at *6 (D.D.C. Feb. 6, 2025). Even assuming *arguendo* that Voja's redemption of treasury bonds is akin to exchanging currencies, see id., his argument undermines his position. If the funds derived from the bonds are best understood as the same capital as the bond itself, then the agency would seem to have *more* reason to inquire into the bonds' lawful source. It is not clear, under Voja's own suggestion, why the treasury bonds would not be the "immediate" source of the funds.

in EB-5 application proceedings). More to the point, the Court sees nothing amiss in the agency's evident concern about commingled funds underlying Voja's EB-5 petition given his lack of documentation and shifting explanations. See AR.3928–30.

Pivoting, Voja insists the unexplained origins of the $200,000 deposit are "completely irrelevant," Pl.'s MSJ at 18, or else "entirely immaterial," Pl.'s Reply at 8. But this argument comes up short. To start, Voja repeats his position that the agency could consider only the "immediate" source of the funds—a position the Court has already rejected. See supra Section III.A. Further, he maintains that the $200,000 was deposited *before* he sourced more than $500,000 in funds also funneled to the NCE. In his view, the agency erred in not using the "lowest intermediate balance rule" ("LIBR") to presume that, to the extent his bank account commingled the putatively unlawful $200,000 with the lawful $500,000, the lawful latter funds would have been the first withdrawn. See Pl.'s MSJ at 19.

The Court does not see where in the voluminous administrative record Voja presented an argument about the LIBR to the agencies, and he does not point to any such argument. See Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin., 429 F.3d 1136, 1150 (D.C. Cir. 2005) ("[A] party will normally forfeit an opportunity to challenge an agency [decision] on a ground that was not first presented to the agency for its initial consideration."); DOT v. Pub. Citizen, 541 U.S. 752, 764–65 (2004); e.g., Thiagarajan v. Koumans, No. 19-CV-1116 (RDM), 2020 WL 2838595, at *6 (D.D.C. May 31, 2020). Even assuming such an omission does not forfeit the argument, the Court fails to see how the agency abused its discretion or acted contrary to law in failing to adopt an accounting rule neither dictated nor expressly forbidden by its regulations. See Norton v. S. Utah Wilderness All., 542 U.S. 55, 63 (2004) ("[T]he only agency action that can be compelled under the APA is action legally

*required.*"); see Ctr. for Biological Diversity v. Zinke, 260 F. Supp. 3d 11, 20 (D.D.C. 2017) (Jackson, J.) (explaining "courts cannot compel agencies to take action *beyond* what is legally required of them"). After all, there are several approaches to tracing commingled funds. See United States v. Banco Cafetero Panama, 797 F.2d 1154, 1159 (2d Cir. 1986). Voja presents no argument that the law compels use of the LIBR.

In sum, the record supports the agency's determination that Voja did not present sufficient evidence establishing the lawful source of the treasury bonds and $200,000 deposit. Because the agency duly considered the relevant evidence and reasonably explained its deficiencies, the Court will uphold its decision to deny Voja's application for an EB-5 visa.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Voja's Motion for Summary Judgment and GRANTS Defendants' Cross-Motion for Summary Judgment. A separate Order shall accompany this opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: September 25, 2026